UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/21/19

DANIEL BOURBIA, individually and on
behalf of all others similarly situated,

     *Plaintiff*,

  -against-

S.C. JOHNSON & SON, INC.,

     *Defendant*.

------------------------------------------------------------X

18 Civ. 3944 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

  This is a class action on behalf of purchasers of Off! Family Care Clean Feel Insect Repellent ("Off! Clean Feel") in the United States. Off! Clean Feel's label states that it provides "Effective protection from mosquitoes," and includes the instructions: "Reapply every 3-4 hours. Frequent reapplication and saturation are unnecessary. Do not apply more than three times per day." Plaintiff claims that these labels are incorrect and misleading because Off! Clean Feel is actually ineffective at repelling or protecting from mosquitoes, and violate the consumer protection and other laws of New York and the Magnuson-Moss Warranty Act.

  Defendant moves to dismiss the complaint on the grounds that Plaintiff's claims are preempted by the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136, *et seq.*, or otherwise fail to meet the pleading standards of Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure. For the following reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

# BACKGROUND

## I. EPA Registration Procedures[1]

The Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") requires manufacturers of pesticides, including insect repellents, to register their products with the Environmental Protection Agency ("EPA"). *See* 7 U.S.C. § 136, *et seq*. An applicant for registration must file a statement including "a complete copy of the labeling of the pesticide, a statement of all claims for it, and any directions for use," together with "a full description of the tests made and results thereof upon which the claims are based." 7 U.S.C. §§ 136a(c)(1)(C), (F). FIFRA defines "label" as "the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers." 7 U.S.C. § 136(p)(1). Draft label texts and the final printed label must be approved by the EPA. 40 CFR § 156.10(6)(i).

The EPA will register the pesticide and approve its label after reviewing the relevant data if it determines, *inter alia*, that the pesticide's "composition is such as to warrant the proposed claims for it," 7 U.S.C. § 136a(c)(5)(A); 40 CFR 152.112(d), and that its label complies with the requirements of FIFRA § 136a(c)(5)(B) and is not misbranded, 40 CFR § 152.112(f). Once a manufacturer registers a pesticide with the EPA, the manufacturer generally may not modify the label without EPA approval. 7 U.S.C. § 136j(2)(A); 7 U.S.C. § 136a(f)(1).

## II. Registration of Off! Clean Feel

The complaint alleges that Off! Clean Feel is a product that Defendant manufactured and represents to be an "insect repellent" that "repels mosquitoes" and provides "effective protection

---

[1] Pursuant to Fed. R. of Evid. 201, the Court takes judicial notice of documents relating to the approval of Off! Clean Feel and documents available on the website of the Environmental Protection Agency, because the documents' authenticity have not been and cannot be reasonably disputed. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 504 (S.D.N.Y. 2018).

from mosquitoes." (Dkt. 1 ("Complaint" or "Compl.") ¶ 2.) The product's label instructs consumers to: "Reapply every 3-4 hours. Frequent reapplication and saturation are unnecessary. Do not apply more than three times per day." (*Id.* ¶¶ 4-5.) Unlike other personal repellents distributed by Defendant, Off! Clean Feel is a deet-free formulation, and instead contains the active ingredient picaridin. (*Id.*; Dkt. 19 Ex. A.)

Off! Clean Feel is registered with the EPA and bears EPA Reg. No. 4822-536. (Dkt. 19 Ex. A.) The EPA initially approved the registration and label in 2001. *See* EPA New Pesticide Fact Sheet, at 1, *available at* https://www3.epa.gov/pesticides/chem_search/reg_actions/registration/fs_PC-070705_01-May-05.pdf. The label approved by the EPA included the following statements: "Effective protection from mosquitoes, biting flies and fleas"; "Repels insects for up to 3 to 4 hours." (Dkt. 9 Ex. B.)

In Off! Clean Feel's registration, Defendant submitted to the EPA data from field studies of the product regarding its effectiveness at repelling mosquitoes. On April 17, 2000, the EPA entomologist who reviewed the data found it to be acceptable and to support a mosquito repellency claim of 3-4 hours for the label. (*Id.* Ex. C.) Laboratory studies were also submitted to support and supplement the field studies. (*Id.*)

Subsequently, Defendant sought an amendment to Off! Clean Feel's label to add a claim of repellency to mosquitoes that may carry the West Nile Virus. (*Id.* Ex. D.) On January 25, 2006, the same EPA entomologist who had reviewed efficacy data in 2000 concluded: "The existing data and published studies support a WNV [West Nile Virus] claim." (*Id.* at 1.)

On February 18, 2016, the EPA approved another amendment to the Off! Clean Feel label to add claims of repellency against mosquitoes that may carry the Dengue virus and the Zika virus. (*Id.* Ex. E.)

3

### III. Effectiveness of Off! Clean Feel

Plaintiff contends that Off! Clean Feel is a "complete sham" and that contrary to its labeling, does not repel mosquitoes. An independent laboratory testing, commissioned by Plaintiff's counsel in early 2018, revealed that Off! Clean Feel was ineffective in repelling Aedes mosquitoes and Culex mosquitoes—the two most common species of mosquitoes found in the United States. (Compl. ¶¶ 2-6.) Off! Clean Feel failed the independent laboratory testing almost immediately—within half an hour of application, all of the test subjects were bitten by both species of mosquitoes. (*Id.* ¶¶ 4-5.)

In 2016, Consumer Reports also tested Off! Clean Feel. (*Id.* ¶ 6.) The subjects were bitten by Aedes and Culex mosquitoes within one hour after application, leading Consumer Reports to conclude that Off! Clean Feel exhibited "poor performance" at repelling mosquitoes. (*Id.* ¶ 6.)

Plaintiff purchased Off! Clean Feel from a Duane Reade store located in New York City in the summer of 2016 for approximately $7. (*Id.* ¶ 9.) Prior to purchase, Plaintiff carefully read the Off! Clean Feel bottle's labeling, including the representations that it is an "insect repellent," that it "repels mosquitoes," and that it provides "effective protection from mosquitoes." (*Id.*) Plaintiff believed these statements to mean that Off! Clean Feel would repel mosquitoes and relied on them—he would not have purchased Off! Clean Feel at all, or would have only been willing to pay a substantially reduced price for Off! Clean Feel, had he known that these representations were false and misleading. (*Id.*) Plaintiff used the product as directed, but it did not provide effective production from mosquitoes, as advertised. (*Id.*)

# DISCUSSION

## I. Motion to Dismiss Standard

To defeat a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* The court must construe the factual allegations contained in the complaint as true and view the complaint in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 572.

At the motion to dismiss stage, the court "assess[es] the legal feasibility of the complaint," but does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011). "When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the Complaint as exhibits or incorporated in it by reference." *Fraser v. Fiduciary Tr. Co. Int'l*, 417 F. Supp. 2d 310, 317 (S.D.N.Y. 2006) (Crotty, J.) (citing *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## II. Preemption

### A. Standard

"Preemption of state law occurs through the 'direct operation of the Supremacy Clause.'" *Ault v. J.M. Smucker Co.*, No. 13 CIV. 3409 PAC, 2014 WL 1998235, at *2 (S.D.N.Y. May 15, 2014) (quoting *Kurns v. R.R. Friction Prods. Corp.*, 132 S.Ct. 1261, 1265 (2012)). Nonetheless,

5

"the States are independent sovereigns in our federal system," and courts "have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Accordingly, "[i]n areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'" *Id.* In determining whether a state law is expressly preempted by a federal law, courts examine "the elements of the common-law duty." *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 492 (2013).

Under FIFRA, a manufacturer must obtain the EPA's approval of a pesticide, such as mosquito repellent, and its label before it can be sold. *See* 7 U.S.C. § 136 *et seq*. Still: "In no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter." 7 U.S.C. § 136a(f)(2).

FIFRA also contains an express preemption section. Under 7 U.S.C. 136v(a): "A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter." "Such State shall not impose or continue in effect any requirements for labeling or *packaging in addition to or different from* those required under this subchapter." 7 U.S.C. 136v(b) (emphasis added). The prohibitions in § 136v(b) are narrow, and "apply only to 'requirements.'" *Bates*, 544 U.S. at 443, 452. § 136v(b) primarily "pre-empts competing state labeling standards . . . that would create significant inefficiencies for manufacturers," such as "different labeling regimes prescribing the color, font size, and wording of warnings." *Id.* at 452. "The provision also pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges

from those set out in FIFRA and its implementing regulations. It does not, however, pre-empt any state rules that are fully consistent with federal requirements." *Id.*

The Supreme Court described two conditions for a state rule to be preempted by FIFRA in *Bates*:

> First, it must be a requirement *"for labeling or packaging"*; rules governing the design of a product, for example, are not pre-empted.
>
> Second, it must impose a labeling or packaging requirement that is *"in addition to or different from* those required under this subchapter." A state regulation requiring the word "poison" to appear in red letters, for instance, would not be pre-empted if an EPA regulation imposed the same requirement.

*Bates*, 544 U.S. at 444. The outcome of an event, such as a jury verdict that would induce a manufacturer to change its label, is not determinative of whether a state law rule is a new labeling requirement. *Id.* at 443-45.

### B. Analysis

Congress did not exhibit a "clear and manifest" intention to preempt state regulation of pesticide labeling in FIFRA. Rather, Congress expressly indicated that FIFRA would only preempt "requirements for labeling or packaging *in addition to or different from* those required under this subchapter." 7 U.S.C. 136v(b) (emphasis added). Defendant argues that all of Plaintiff's claims are preempted, since they "relate to the core EPA-approved label claims of 'effective protection against mosquitoes' and 'repels insects for up to 3-4 hours.'" (Dkt. 18 at 11.) This oversimplifies the scope of FIFRA preemption.

Plaintiff's claims are not preempted if they are not requirements for labeling or packaging. "Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging,'" because "[n]one of these common-law rules

7

requires that manufacturers label or package their products in any particular way." *Bates*, 544 U.S. at 444.

State law claims that impose sanctions for violation of a federal labeling or packaging requirement, but do not add new or additional requirements, are also not preempted. *Id.* at 442 ("The imposition of state sanctions for violating state rules that merely duplicate federal requirements is equally consistent with the text of § 136v."). The EPA's review and approval of a manufacturer's efficacy data does not mean that the manufacturer is free from liability if the label it submitted is misleading and violates FIFRA. *See Gucciardi v. Bonide Prod., Inc.*, 28 F. Supp. 3d 383, 392 (E.D. Pa. 2014) ("[T]o the extent that Defendants' contend that the mere existence of the registration negates Plaintiffs' claims that the Product was dangerous, they are mistaken."). Indeed, as the text of FIFRA makes clear, registration of a product and its label is not a defense for the commission of any offense under the statute. *See* 7 U.S.C. § 136a(f). And since FIFRA prohibits "misbranding," Defendant can still be held liable under state law if a pesticide's label contains statements that are "false or misleading in any particular," or omits necessary directions for use, warnings, or cautionary statements. 7 U.S.C. § 136(q)(1)(A), (F)-(G); *see also Bates*, 544 U.S. at 454.[2]

Defendant argues that preemption applies here because *Bates* involved an agricultural pesticide for which the EPA waived its normal review of efficacy data. But *Bates* never stated that the state law claims at issue were not preempted because the EPA had waived the efficacy review. Rather, the Court's discussion of preemption was about FIFRA in general. The Court

---

[2] "To survive pre-emption, the state-law requirement need not be phrased in the *identical* language as its corresponding FIFRA requirement; indeed, it would be surprising if a common-law requirement used the same phraseology as FIFRA. . . . [But] a manufacturer should not be held liable under a state labeling requirement subject to § 136v(b) unless the manufacturer is also liable for misbranding as defined by FIFRA." *Id.*

8

only mentioned that the EPA waived efficacy review of certain pesticides as additional support that it is "unlikely that Congress considered a relatively obscure provision like § 136v(b) to give pesticide manufacturers virtual immunity from certain forms of tort liability." *Bates*, 544 U.S. at 450. *Bates* applies here and is not limited to cases involving agricultural pesticides for which the EPA waived efficacy review. *See Esposito v. Contec, Inc.*, 47 N.Y.S.3d 180, 182 (N.Y. App. Div. 2017); *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 715 (D.N.J. 2011).

Moreover, the fact that Defendant would require EPA approval to change Off! Clean Feel's label does not mean that all state law claims that would lead to a label change are preempted. *See Bates*, 544 U.S. at 443-45 (rejecting inducement test). A pesticide manufacturer cannot escape liability for violations of FIFRA and state law just because it cannot unilaterally strengthen its labels without EPA approval. *See id.*

The Court analyzes preemption and the adequacy of the pleadings of each state law claim in turn.[3]

### III. Breach of Express Warranty

FIFRA does not preempt state claims for breach of express warranty, since "a cause of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product." *Bates*, 544 U.S. at 444. This common law rule imposes no requirement on the manufacturer to make an express warranty or other rule "for labeling or packaging." *See id.*

---

[3] State law is "impliedly pre-empted where it is impossible for a private party to comply with both state and federal requirements." *Mut. Pharm. Co.*, 570 U.S. at 473 (internal citation and quotation marks omitted). Conflict preemption is foreclosed here, however, since Congress enacted a provision defining the preemptive reach of FIFRA. *See* 7 U.S.C. 136v(b); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992).

9

While Defendant's instructions for use track the requirements under FIFRA, 40 CFR § 156.10(i)(2)(iii), (iv), (v), they can still be considered a warranty. The need for EPA approval to change the label does not make the label one that is specifically required. *See Wyeth v. Levine*, 555 U.S. 555, 592 (2009) ("Initial approval of a label amounts to a finding by the FDA that the label is safe for purposes of gaining federal approval to market the drug. It does not represent a finding that the drug, as labeled, can never be deemed unsafe by later federal action, or as in this case, the application of state law."). Plaintiff's express warranty claim is not preempted. *See Bates*, 544 U.S. at 444; *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 490 (3d Cir. 2006); *Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1287 (D. Haw. 2015).

Plaintiff stated a claim for breach of express warranty, since product descriptions such as those on Off! Clean Feel's label are considered express warranties under New York's Uniform Commercial Code, and Plaintiff alleged that the label statements were part of the basis of the bargain. *See* N.Y. U.C.C. Law § 2-313 ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."); *see also Hart v. BHH, LLC*, No. 15CV4804, 2017 WL 2912519, at *4 (S.D.N.Y. July 7, 2017) (it is "well-settled law that a description of goods at issue can create an express warranty so long as it was part of the basis of the parties' bargain"). Defendant's motion to dismiss the breach of express warranty claim is DENIED.

## IV. Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act ("MMWA") "grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written

warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). "Written warranty" is defined as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time . . . which . . . becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6)(A). The MMWA claim is not preempted as it relates to an express warranty. *See supra* Sect. III.

Plaintiff also sufficiently stated a claim under the MMWA. The Complaint alleges that Defendant represented that Off! Clean Feel is an "'insect repellent' that 'repels mosquitoes' and provides 'effective protection from mosquitoes,'" (Compl. ¶ 2), and instructed consumers to "[re]apply ever 3-4 hours. Frequent reapplication and saturation are unnecessary," (*id.* ¶ 5). Off! Clean Feel's label includes application instructions that indicate that the product will "meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A); *cf. Hart v. BHH, LLC*, No. 15CV4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) (statement that product will work "fast" is not representation that product will meet specified level of performance over specified period of time); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) ("'Restores Enamel' is a product description, not a promise of performance over time.") The motion to dismiss the MMWA claim is DENIED.

## V. New York General Business Law §§ 349 and 350

New York General Business Law ("GBL") §§ 349 and 350 make illegal: "deceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To establish a *prima facie* case under either provision, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers,

11

(2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Plaintiff's claims under §§ 349 and 350 appear to impose labeling requirements, but would not be preempted if the complained-of statements fall within FIFRA's prohibition on "misbranding." *Bates*, 544 U.S. at 438 ("A pesticide is 'misbranded' if its label contains a statement that is 'false or misleading in any particular,' including a false or misleading statement concerning the efficacy of the pesticide . . . if its label does not contain adequate instructions for use, or if its label omits necessary warnings or cautionary statements."). It is possible for Defendant to comply with both federal law and state law, and there is no direct conflict between the two. *See Wyeth*, 555 U.S. at 593.

Moreover, the GBL's safe harbor provisions have no effect if the claims are not preempted. The safe harbor provides a complete defense that the act or practice at issue is subject to and complies with federal rules and regulations, meaning compliance with FIFRA would preclude Plaintiff's claims under §§ 349 and 350. *See* N.Y. Gen. Bus. Law §§ 349(d), § 350-d; *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144 (S.D.N.Y. 1987). Since preemption precludes any state law labeling obligations in addition to or different from FIFRA, Defendant would only be liable under state law for labeling requirements that violate FIFRA (*i.e.* misbranding). The safe harbor provisions are thus meaningless under the present circumstances.

Plaintiff's GBL §§ 349 and 350 claims are not preempted to the extent that they do not impose labeling requirements different or in addition to those under FIFRA, and Plaintiff adequately states a claim. Defendant's motion to dismiss these claims is DENIED.

## VI. Fraud

"The elements of fraud under New York law are: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Premium Mortg. Corp. v. Equifax Info. Servs., LLC*, 583 F.3d 103, 108 (2d Cir. 2009). Plaintiff's fraud claim is not preempted, as it could fall within FIFRA's prohibition on "misbranding." 7 U.S.C. § 136(q)(1)(A), (F), (G).

Claims of fraud are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." While "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," *id.*, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010) (internal citation omitted). Plaintiff's pleadings include specific descriptions of the alleged false and misleading statements on Off! Clean Feel's label, (Compl. ¶¶ 3-4), allegations that Defendant made the statements with knowledge of their falsehood, (*id.* ¶ 49), and an assertion that Plaintiff relied on and was induced by the false statements to purchase Off! Clean Feel, (*id.* ¶ 50). Such pleadings are sufficient under Rule 9(b). The motion to dismiss the fraud claim is DENIED.

## VII. Unjust Enrichment

"The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) (internal citation omitted). To establish unjust enrichment, the plaintiff must demonstrate: "(1) the other party was enriched, (2) at the other

party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mahoney v. Endo Health Sols., Inc.*, No. 15 Civ. 9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016). In New York, a plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed. *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016).

Plaintiff's unjust enrichment claim is duplicative. It relies on the same conduct that forms the basis of his other claims. To the extent any of Plaintiff's other claims succeed, the unjust enrichment claim would be duplicative; to the extent they do not succeed, the unjust enrichment claim would not remedy the defects. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 791 (2012). Accordingly, Defendant's motion to dismiss the unjust enrichment claim is GRANTED. *Id.*; *see also Mahoney*, 2016 WL 3951185, at *11 (cases allowing unjust enrichment to proceed along with § 349 claims do not overcome *Corsello*, "which held that an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim").

## CONCLUSION

Plaintiff's claims are not preempted by FIFRA. Defendant's motion to dismiss the breach of express warranty, MMWA, GBL §§ 349 and 350, and fraud claims is DENIED. Defendant's motion to dismiss the unjust enrichment claim is GRANTED. The Clerk of Court is directed to terminate the motion at Dkt. 17.

Defendant is directed to answer the Complaint, and both parties are directed to jointly submit a civil case management plan, by Friday, April 19, 2019.

Dated: New York, New York
       March 21, 2019

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge